**In re HYPERION ENTERPRISES, INC., Debtor.**

**Arnold BLASBALG, Trustee, Plaintiff,**

**v.**

**EMPLOYEE STAFFING OF AMERICA, INC., Defendant.**

**Bankruptcy No. 91–12630.
Adv. No. 93–1128.**

United States Bankruptcy Court, D. Rhode Island.

March 8, 1995.

Thomas Hemmendinger, Providence, RI, for plaintiff.

Deena Christelis, Providence, RI, for defendant.

---

### ORDER ON TRUSTEE'S COMPLAINT SEEKING AVOIDANCE OF PREFERENCES

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on February 22, 1995, on the Trustee's Complaint to recover certain payments by the Debtor to Employee Staffing of America ("ESA"), made within the ninety days prior to the date of the petition.[1]

Pre-petition, Hyperion and ESA had entered into a contract for ESA to provide employees for Hyperion's operations. ESA employees working at Hyperion were paid weekly, one pay period in arrears, after ESA issued payroll checks to Hyperion for disbursement to the employees on Fridays. As of the filing date, it had become the ordinary course of business of the parties that Hyperion would pay ESA one week in arrears, and that prior to releasing the current payroll checks to Hyperion, ESA would require Hyperion to reimburse ESA for the payroll it had advanced the previous week.

In dispute are the following three payments made by the Debtor to ESA, which the Trustee contends are preferences: (1) $20,011.75 on August 22, 1991; (2) $2,636.16 on September 9, 1991; and (3) $4,753.95 on October 11, 1995. The Trustee concedes that his other preference arguments fail because, as to each of those payments ESA provided new value to the Debtor in exchange for the payments. *See* 11 U.S.C. § 547(c)(4). He

also contends that if it is determined that the Debtor in fact did make a (disputed) $42,000 payment to ESA on August 29, 1991, then the Defendant's new value defense fails as to the above three payments.

Upon consideration of the evidence presented, the pleadings filed and the arguments of counsel, we make the following findings of fact and conclusions of law:[2]

■ (1) As a threshold matter, the Trustee has not established that an alleged $42,000 payment was made to ESA on or about August 29, 1991. To the contrary we find, without difficulty, that no such payment was ever made. In support of the contention that such a payment was made, the Trustee introduced Exhibit 2, a check from the personal account of David G. Halmi, the former principal of the Debtor corporation, in the amount of $52,561.75 made out to "Cash." A memo on the check reads "Esa + Modum." Mr. Halmi testified that at the time he negotiated the check, he "was making payments of $10,000 to Modum whenever he got the cash," and *assumes* that he made such a payment" in this instance. Then he makes the considerable leap to conclude that the balance of the proceeds of that check *must have been paid to ESA,*[3] because ESA released the payroll checks for the week of August 30, 1991. Gloria Stevens, the Secretary of ESA, testified that the Defendant's records do not reflect the receipt of a $42,000 payment at or about that time. The Trustee has the burden of proof herein, he has come up quite short,[4] and in resolving this issue we determine all issues of credibility in favor of the Defendant.

■ (2) In light of the finding that $42,000 was not paid as alleged, the $20,011.75 payment on August 22, 1991 is not preferential, as ESA provided new value to the Debtor in the form of the release of payroll checks for that week, plus the advance of the following

---

1. This case was commenced as an involuntary Chapter 7 on October 11, 1991, and the Order for Relief was entered on October 18, 1991.

2. This Order sets forth findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052.

3. This is the only support for the Trustee's contention that a payment was made. Halmi doesn't even have an independent recollection of such an event.

4. The documentary evidence in this case was virtually nonexistent.

weeks' payroll on August 28, 1991, in the amount of $39,699.63. Those funds remained due to ESA as of the petition date.

■■■ (3) As for the September 9, 1991 payment in the amount of $2,636.16 and the October 11, 1991 payment for $4,753.95, we find that these payments were: (a) transfers of an interest of the Debtor to a creditor; [5] (b) on account of an antecedent debt owed by the Debtor; (c) made while the Debtor was insolvent; (d) within the 90 day period preceding the filing of the bankruptcy petition; (e) that enabled ESA to receive more than it would have received in this Chapter 7 proceeding if the payments had not been made. See 11 U.S.C. § 547(b). The defenses raised by ESA as to these two transfers are invalid because the Debtor had already ceased operations and ESA was no longer providing employees or services of any kind to the Debtor. See 11 U.S.C. § 547(c)(1). Neither may it be argued that these payments were in the ordinary course of business, again because they were untimely. See 11 U.S.C. § 547(c)(2). Finally, ESA could not have provided any new value to or for the benefit of the Debtor *after such transfers,* as it had ceased providing *any* services to the Debtor prior to the time these transfers were made. See 11 U.S.C. § 547(c)(4).[6] Accordingly, we conclude that the September 9, and October 11, 1991 payments to ESA are avoidable as preferences, and that the Trustee should recover from ESA the amount of $7,390.11.[7] See 11 U.S.C. § 550(a).

Enter Judgment consistent with this opinion.

---

5. The Defendant also argues that because the payments were made from Halmi's personal account, they were not transfers of an interest of the Debtor. That argument is rejected, as it is completely at odds with the evidence. According to Halmi's direct testimony, the funds in his personal account at that time were property of the Debtor. As Halmi carefully explained, he was conducting the Debtor's business affairs through his personal account because deposited funds were available quicker there, than they would have been using the Debtor's business account.

6. The Defendant also contends that these payments constituted wages paid to employees of the Debtor, and as such should not be held to be preferences. The evidence is clear that the individuals in question were employees of ESA, which in turn was providing a service to the Debtor.

7. $2,636.16 plus $4,753.95 = $7,390.11.