**In re WHITACRE SUNBELT, INC., Debtor.**

**John W. RAGSDALE, Jr., as Trustee for the Estate of Whitacre Sunbelt, Inc., Plaintiff,**

**v.**

**SOUTH FULTON MACHINE WORKS, INC., and David A. Whitacre, Defendants.**

Bankruptcy No. 94–61954.
Adv. No. 95–6615.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 9, 1996.

William Russell Patterson, Ragsdale, Beals, Hooper & Seigler, Atlanta, GA, for plaintiff.

Charlotte Harris Beltrami, King & Croft, Atlanta, GA, for South Fulton Machine Works.

John C. Pennington, Wilson, Strickland & Benson, Atlanta, GA, for David A. Whitacre.

## *ORDER*

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on cross motions for summary judgment filed by the plaintiff John W. Ragsdale, Jr., as Trustee ("plaintiff" or "Trustee") and defendant South Fulton Machine Works, Inc. ("SFM"). The Trustee is attempting to avoid a $325,000.00 payment as a fraudulent transfer under 11 U.S.C. §§ 544(b), 548, and O.C.G.A. § 18–2–22, and to recover $325,-000.00 from SFM under 11 U.S.C. § 550.[1] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H). After carefully reviewing the briefs and affidavits filed by the parties, the Court finds that defendant David A. Whitacre ("Mr. Whitacre") was the initial transferee and not a "conduit" and that defendant SFM was not an initial transferee under 11 U.S.C. § 550(a)(1). However, there are genuine issues of material fact pertaining to SFM's defense under 11 U.S.C. § 550(b)(1) which preclude summary judgment.

When a motion is brought under Fed. R.Bankr.P. 7056, incorporating Fed.R.Civ.P. 56, and judgment is not rendered for all the relief requested, the Court can, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually in good faith controverted. Fed.R.Civ.P. 56(d). In accordance with Rule 56(d), the Court finds the following facts exist without substantial controversy.

Mr. Whitacre was an insider of both the debtor, Whitacre Sunbelt, Inc. ("debtor") and an affiliate, Whitacre International, Inc. ("WII"). Both of these corporations filed Chapter 11 cases on February 9, 1994. De-

---

**1.** The parties agree that Count III of the Trustee's complaint, stating a cause of action under a voidable preference theory, has no basis in fact or law and should be dismissed.

fendant SFM was a supplier and trade creditor of WII, but not of the debtor. WII's debt to SFM was personally guarantied by Mr. Whitacre. Debtor's case converted to a Chapter 7 case almost immediately, and plaintiff was appointed the Chapter 7 Trustee. In the WII case, a Chapter 11 trustee was appointed on May 2, 1994 and the case was converted to a case under Chapter 7 on July 21, 1995.

In 1992, approximately 75% of SFM's business was its business with WII. As of May 11, 1992, WII owed SFM $303,778.14 in unpaid invoices, and SFM had committed an additional $924,487.60 to production work for WII. Between July and September of 1992, WII and SFM negotiated an agreement regarding payment and delivery terms. Balance sheets and income statements of WII from 1992 given to SFM show that WII's liabilities exceeded its assets and that it was losing money. WII and SFM signed an agreement on September 10, 1992, at which time Mr. Whitacre signed a personal guaranty of WII's debt to SFM in the amount of $467,887.07, plus amounts that may become due for parts inventory up to $250,000.00.

On March 9, 1993, WII sent SFM a financial statement for 1992, showing that WII was insolvent and was losing money. By letter dated May 21, 1993, counsel for SFM informed Mr. Whitacre and WII that WII owed SFM $932,425.07, and was in breach of the September 10, 1992 agreement. SFM refused to provide any parts or service to WII until the parties entered into a new agreement providing for, among other things, regular payments and unlimited personal guaranties from Mr. Whitacre and his wife. On July 14, 1993, WII's counsel wrote SFM's counsel with the terms of a new agreement, and he enclosed the payment in issue of $325,000.00.

The basic facts relating to the $325,000.00 transfer are not in dispute. On July 14, 1993, debtor issued a check for $325,000.00, drawn on its account at Bank South, payable to "David A. Whitacre" and signed by Mr. Whitacre. Mr. Whitacre took the check to Bank South the same day and exchanged it for a Bank South official check for $325,-000.00 made payable to SFM. Mr. Whitacre was listed as the remitter on the official check, and the official check contained no reference to the debtor. Mr. Whitacre tendered the check to SFM on July 14, 1993, and SFM accepted the check on July 15, 1993.

The $325,000.00 payment was made as part of the new agreement among Mr. Whitacre, WII, and SFM. The Trustee asserts that the new agreement was intended to pay SFM enough to stop it from cutting off supplies to WII. SFM argues that the agreement and the $325,000.00 payment were intended to release Mr. Whitacre from his personal guaranty to SFM. Prior to this payment, Mr. Whitacre had never personally paid a WII obligation. At the time of this payment, debtor was insolvent, owed no debts to SFM, and received no consideration for the transfer.

Genuine issues of material fact exist as to whether defendant SFM took the payment from Mr. Whitacre in good faith, without knowledge that the initial transfer from debtor to Mr. Whitacre was fraudulent or that debtor was the source of the funds. The Trustee claims that SFM's dealings with WII should have put it on notice that Mr. Whitacre was "funneling" money away from debtor. SFM denies that it knew anything of substance about the finances of either entity or Mr. Whitacre, other than that WII was late in paying SFM, and believed Mr. Whitacre to be a prosperous businessman. (Aff. of Lonnie Ragan ¶ 14.) SFM claims it knew nothing about the source of the funds it received, and SFM's president believed that the money came from Mr. Whitacre's retirement savings. (Aff. of Lonnie Ragan ¶ 19.)

Mr. Whitacre has supplied two affidavits in connection with these summary judgment motions. One affidavit, signed and filed on March 19, 1996, states that the sole purpose of the debtor's check was to pay SFM enough to keep WII in business. (3/19/96 Aff. of David A. Whitacre ¶¶ 3–4.) The other affidavit, signed on February 2, 1996 and filed on April 1, 1996 with SFM's reply brief, states that Mr. Whitacre gave the $325,-000.00 check to SFM "in payment of my guaranty of a debt owed by WII, and in exchange for a Release from defendant

SFM." He also states that he "never told SFM or any of its officers or agents that the $325,000.00 was coming from the debtor." (2/2/96 Aff. of David A. Whitacre ¶ 4–5.)

■ Under both federal and state law, a transfer by an insolvent debtor is voidable if the insolvent debtor did not receive equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(2); O.C.G.A. § 18–2–22(3). Debtor was insolvent on July 14, 1993, and it did not receive any value in exchange for the $325,000.00 transferred. Thus, the transfer may be avoided. However, § 550 of the Bankruptcy Code governs whether, and to what extent, an avoidable transfer under § 548 can be recovered from a particular party. The key issue in the pending summary judgment motions is whether the Trustee may recover the amount transferred from SFM as the "initial transferee" under 11 U.S.C. § 550(a)(1), or as an "immediate or mediate transferee" under § 550(a)(2). Sections 550(a) and (b) of the Bankruptcy Code provide:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from—
>
>> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
>>
>> (2) any immediate or mediate good faith transferee of such transferee.

Whether SFM is an initial transferee under (a)(1) or an immediate transferee under (a)(2) is an important distinction, because the initial transferee cannot raise the "good faith taker" defense provided under § 550(b).

The Trustee contends that SFM was an "initial transferee" under § 550(a)(1), and that Mr. Whitacre was a mere "conduit" between debtor and SFM. SFM argues that Mr. Whitacre was the "initial transferee" and that SFM was an "immediate or mediate" transferee under § 550(a)(2) entitled to the protection of the good faith taker defense.

■ The terms "initial transferee" and "immediate or mediate transferee" are not defined in the Bankruptcy Code. The courts have developed an exception to the liability of the initial transferee by holding that a party is not liable as the initial transferee if it is a "conduit," a party who merely facilitates the passing of property to someone else. The Eleventh Circuit has adopted the "conduit" or "control" test to determine whether a party is an initial transferee. The test recognizes that certain agents or fiscal intermediaries, which are usually banks, have no beneficial interest in an avoidable transfer and should not be thought of as initial transferees. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 598–99 (11th Cir.1990); *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199–1200 (11th Cir.1988); *see also Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988). A person must have dominion or control over the property received in the transfer to be an initial transferee. That is, he must be able to put the money to his own purposes, such as by using it to pay a debt. *Arab Banking*, 904 F.2d at 598–99; *Societe Generale*, 848 F.2d at 1199–1200; *Bonded Financial*, 838 F.2d at 893–94.

■ The Trustee argues that, like the banks in the conduit theory cases, Mr. Whitacre did not receive the $325,000.00 check from the debtor for "his personal account." To support this argument, the Trustee submitted an affidavit of Mr. Whitacre, indicating that during the transaction, it was always his intent to forward the funds to SFM. (3/19/96 Aff. of David A. Whitacre ¶ 3.) However, in his other affidavit, Mr. Whitacre states he made the payment to obtain a release of his guaranty to SFM. (2/2/96 Aff. of David A. Whitacre ¶ 4.) It is the ability of

the transferee to use the money for his own benefit, not his actual mental state, that defines the dominion and control of the transferee. *E.g., Arab Banking,* 904 F.2d at 598–99; *Societe Generale,* 848 F.2d at 1199–1200; *Bonded Financial,* 838 F.2d at 893–94. The record here does not support a finding that Mr. Whitacre had no ability to use the money for his own benefit. Indeed, he did use it for his own benefit—to pay off a debt that he personally guarantied. Therefore, he cannot be protected as a mere conduit in the transfer from debtor to SFM. *See IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.),* 915 F.2d 1049, 1055 n. 3 (6th Cir.1990), *rev'd on other grounds,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Lowry v. Security Pac. Business Credit, Inc. (In re Columbia Data Prods., Inc.),* 892 F.2d 26, 29 (4th Cir. 1989).

The Trustee cites *Richardson v. FDIC (In re M. Blackburn Mitchell Inc.),* 164 B.R. 117 (Bankr.N.D.Cal.1994), as a case where the conduit theory was used to prevent the ultimate recipient of the transfer from asserting the good faith taker defense. This case is distinguishable. In *Blackburn Mitchell,* the debtor issued a check from its bank account to the bank. Then the bank issued a cashier's check in the same amount to the FDIC to satisfy a judgment against the debtor's principal. The Court held that the FDIC, not the bank or the principal, was the initial transferee. The bank was a mere conduit, and the principal never received the funds and was never in possession of the funds. 164 B.R. at 121. In the case at bar, debtor's check was made payable to Mr. Whitacre, not to a bank and not to SFM. Unlike the principal in *Blackburn Mitchell,* Mr. Whitacre received the transfer and was the initial transferee within the plain meaning of that term.

Using plain, dictionary definitions, "an initial transferee under section 550 is the entity who received the transfer in question directly from the debtor." Craig H. Averch, *Protection of the "Innocent" Initial Transferee of an Avoidable Transfer: An Application of the Plain Meaning Rule Requiring Use of Judicial Discretion,* 11 Bankr.Dev.J. 595, 601 (1995). Using the plain meaning, Mr. Whit-

acre was the initial transferee, because he received a check made to his order from the debtor. The origin of the conduit theory is the desire to protect the "mere conduit," not to expand the trustee's avoidance powers. The Trustee has not articulated any reason for protecting Mr. Whitacre in this case. "Since the conduit theory is not grounded in the Code itself, it should be applied carefully and in a limited fashion, particularly where its use is offensive [i.e., directed at depriving transferees of the good faith taker defense]." *Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.),* 168 B.R. 408, 420 (Bankr. D.Ariz.1994).

▪ Finally, the Trustee argues that "it should make no difference whether the initial payee on the debtor's check is the insider or the bank." The Trustee ignores an important distinction between a "one-step" and "two-step transaction" found in the statutory scheme of § 550(a). In a one-step transaction, the debtor's payment is made directly to the insider's creditor. The creditor is the initial transferee, and the insider is the entity for whose benefit the transfer is made. In a two-step transaction, the debtor gives a check to the insider, who then uses the funds to pay his own creditor. In the two-step transaction, the insider is the initial transferee and his creditor is the subsequent transferee. *Schafer v. Las Vegas Hilton (In re Video Depot, Ltd.),* 186 B.R. 126, 132–33 (Bankr.W.D.Wash.1995); *see also Bonded Financial,* 838 F.2d at 895–96. Here, SFM received the $325,000.00 as the second step of the transfer. The first step was the payment from the debtor to Mr. Whitacre. Thus, Mr. Whitacre was the initial transferee under § 550(a)(1), and SFM was the immediate transferee from the initial transferee under § 550(a)(2).

▪ As an immediate or mediate transferee, SFM is entitled to assert a defense under § 550(b)(1) by establishing that it took the transfer for value, in good faith, and without knowledge of the transfer avoided. While it is undisputed that SFM accepted the payment from Mr. Whitacre in satisfaction of WII's debt, thus satisfying the value requirement, there are disputes of fact regarding SFM's knowledge and good faith which pre-

clude summary judgment on the claim against SFM. While the Code does not define "good faith" or "knowledge" under § 550, "[v]enerable authority has it that the recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate." *Bonded Financial,* 838 F.2d at 897–98. Much of the good faith defense depends upon the credibility of the parties, and credibility cannot be determined by summary judgment. Consequently, both the Trustee's and SFM's motions are DENIED. A trial on the good faith defense will be scheduled by separate order.

Defendant David Whitacre has not responded to the Trustee's motion, and therefore the motion as to Mr. Whitacre is deemed unopposed under LR 220–1(b), NDGa. The Trustee has asked that the transfer to Mr. Whitacre be avoided, but the Trustee has not requested that a judgment be entered against Mr. Whitacre. The Trustee should clarify by written pleading filed on or before June 10, 1996, what relief or remedy, if any, he seeks against defendant David Whitacre.