**In re CYPRESS RESTAURANTS OF GEORGIA, INC, Debtor.**

**Leigh R. Meininger, Chapter 7 Trustee For Cypress Restaurants of Georgia, Inc., Plaintiff,**

v.

**TMG Staffing Services, Inc., A Florida Corporation, Defendant.**

**Bankruptcy No. 6:01–BK–09179–KSJ. Adversary No. 6:04–ap–106–KSJ.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Oct. 14, 2005.

David E. Bane, Esquire, Orlando, FL, for Plaintiff.

Banks T. Smith, Esquire, Hall, Smith & Jones, Dothan, AL, for Defendant.

### MEMORANDUM OPINION GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on August 25, 2005, on the Motion for Summary Judgment as to Counts II and III of the Complaint (the "Motion") (Doc. No. 40) filed by the Chapter 7 Trustee, Leigh R. Meininger. In the Motion, the trustee seeks to avoid wire transfers totaling $116,611.62 received by the defendant, TMG Staffing Services, Inc., ("TMG"), and made after the debtor converted its Chapter 11 case to a case under Chapter 7. After reviewing the pleadings and considering the arguments of the parties and the applicable law, the Motion is granted.

The relevant facts are undisputed. The debtor, Cypress Restaurants of Georgia, Inc., operated many family-style restaurants throughout the southeast. On September 18, 2001, Cypress Restaurants of Georgia, Inc., filed this Chapter 11 case. The next month, the debtor[1] and TMG entered into an agreement in which TMG would lease employees to the debtor to staff the debtor's operations. Paragraph IV(2) of the agreement specifies that TMG would be responsible for wages and taxes due the employees, regardless of whether the debtor paid TMG for the employees' services.[2] Because TMG was concerned about the debtor's pending bankruptcy and wanted to ensure prompt payment, in paragraph VI(A) of the agreement, TMG insisted on a provision that required the debtor to make all payments to TMG via wire transfer.

The parties complied with the terms of the agreement for many months. TMG leased employees to the debtor. The leased employees worked in the debtor's restaurants. TMG directly paid the leased employees' wages. The debtor promptly remitted payment to TMG via wire transfer. All went well until the debtor's Chapter 11 case collapsed.

On May 2, 2002, the debtor converted its Chapter 11 case to a case under Chapter 7, and the trustee was appointed. The debtor subsequently made the following transfers via wire transfer to TMG:

1. $89,611.62 on May 9, 2002;

2. $22,000 on May 24, 2002; and

3. $5,000 on June 6, 2002.

---

1. The debtor operated under the names "Cypress Restaurants, Inc." and "Cypress Restaurants of Georgia, Inc," often ignoring the legal division of separate corporate identities. TMG argues that this distinction is important because TMG only had notice of one bankruptcy, that of Cypress Restaurants, Inc. However, the debtor's president signed the agreement on behalf of "Cypress Companies, Inc. (DIP)." TMG submitted a "Proposal for Cypress Companies" (Exhibit 1 to TMG's Brief in Opposition to Trustee's Motion for Summary Judgment as to Counts II and III of the Complaint), specifying different rates for operations in Florida and Georgia, recognizing that more than one Cypress entity existed, and providing that the proposal was contingent upon approval of the Bankruptcy Court. TMG dealt with all of the debtor entities as if they were one and was aware of the collective Chapter 11 proceedings. The distinction in names is not relevant to the legal issues before this Court, i.e. whether TMG received an improper post-petition transfer.

2. The exact language in the agreement provides: "TMG assumes responsibility for the payment of wages to the assigned employees without regard to payments by Client to TMG."

These post-conversion transfers total $166,611.62 and were not authorized by the trustee or the Court. The trustee asserts that the transfers are recoverable as post-petition transfers pursuant to Sections 549 and 550 of the Bankruptcy Code.[3] TMG contends that the transfers should not be avoided because TMG was a mere conduit of the funds as a result of TMG's obligation to pay taxes and wages to the leased employees from the funds transferred by the debtor.

The only fact possibly at issue is the date on which TMG received notice of the conversion. However, TMG's knowledge of the conversion date is irrelevant because timely notice would not have improved TMG's position. TMG would have the same obligation to pay the leased employees regardless of whether the debtor made any payments to TMG. Further, lack of knowledge of the exact date and time of a conversion is not one of the statutory defenses to avoidance of transferee liability pursuant to Bankruptcy Code Section 550(a)(1).

Pursuant to Federal Rule of Civil Procedure 56, which is applicable under the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The trustee, as the moving party, has the burden of establishing the right to summary judgment. *Fitzpatrick v. Schiltz (In re Schiltz)*, 97 B.R. 671, 672 (Bankr.N.D.Ga.1986). In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion, TMG. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th

Cir.1995) (*citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir.1994)). Therefore, a material factual dispute precludes summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When opposing a motion for summary judgment, a party may not simply rest on the pleadings but must demonstrate the existence of elements essential to the non-moving party's case and for which the non-moving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Since there are no factual disputes, the trustee must demonstrate that he is entitled to judgment as a matter of law.

■ Post-conversion transfers of estate property are avoidable unless authorized by the court. 11 U.S.C. § 549(a); *Offic. Comm. Of Unsecured Creditors of Toy King Distribs. v. Liberty Sav. Bank, FSB (In Re Toy King Distribs.)*, 256 B.R. 1, 185 (Bankr.M.D.Fla.2000)("Section 549 allows the trustee ... to 'avoid a transfer of property of the estate—(1) that occurs after the commencement of the case ... [and] that is not authorized [by the Bankruptcy Code] or by the court.'"). *Cf.* another bankruptcy case concerning similar restaurants, *Phoenix Rest. Grp. v. Ajilon Prof. Staffing, LLC (In re Phoenix Rest. Grp.)*, 317 B.R. 491, 497 (Bankr.M.D.Tenn.2004)(citing the same proposition, but distinguishing between payments by the debtor and transfers of estate property). Pursuant to Section 550(a), the trustee may recover the avoided transfers from the initial transferee or

---

**3.** Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

the entity for whose benefit the transfers were made. The term "initial transferee" does not include professional intermediaries, such as banks and escrow agents, which are "mere conduits" of the transfer and do not receive any benefit from the transfer.[4] *Toy King*, 256 B.R. at 144–45.

The Bankruptcy Court for the Northern District of Georgia explored the "mere conduit" theory as a defense to Section 550 in *Ragsdale v. S. Fulton Mach. Works, Inc. (In re Whitacre Sunbelt, Inc.)*, 200 B.R. 422 (Bankr.N.D.Ga.1996):

> The terms "initial transferee" and "immediate or mediate transferee" are not defined in the Bankruptcy Code. The courts have developed an exception to the liability of the initial transferee by holding that a party is not liable as the initial transferee if it is a "conduit," a party who merely facilitates the passing of property to someone else. The Eleventh Circuit has adopted the "conduit" or "control" test to determine whether a party is an initial transferee. The test recognizes that certain agents or fiscal intermediaries, which are usually banks, have no beneficial interest in an avoidable transfer and should not be thought of as initial transferees. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 598–99 (11th Cir.1990); *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199–1200 (11th Cir.1988); *see also Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988). A person must have dominion or control over the property received in the transfer to be an

initial transferee. That is, he must be able to put the money to his own purposes, such as by using it to pay a debt. *Arab Banking*, 904 F.2d at 598–99; *Societe Generale*, 848 F.2d at 1199–1200; *Bonded Financial*, 838 F.2d at 893–94.

*Whitacre Sunbelt*, 200 B.R. at 425.

■ An entity does not have to be a financial institution to be a conduit where the entity receives transferred funds subject to precise disbursement instructions from the transferor. *Lifecare Tech., Inc. v. Berman Law Firm, P.A. (In re Lifecare Tech., Inc.)*, 305 B.R. 88, 92–93 (Bankr. M.D.Fla.2003). The debtor in that case made payments to a law firm, which disbursed the payments to creditors of the debtor. *Id.* at 92. The funds were held separately in a trust account, and the firm was obligated to disburse the money to third parties. *Id.* at 92–93. The firm had no discretion to use the funds for its own benefit. *Id.* at 93. As such, the firm was found to be a conduit within the context of Section 550(a)(1), rather than an initial transferee, and was thus not liable for the transfers. *Id.*

In *Toy King*, the Bankruptcy Court for the Middle District of Florida specifically examined post-petition wire transfers:

> "When the transferee is a creditor, or has a business relationship with the debtor, and it receives a transfer that is applied to its own debt, the transferee cannot be a conduit. This is true because, in its essentials, the avoided transaction is a two party transfer— where A pays B to satisfy A's debt to B—and not a three party transfer—like

---

**4.** Most of the case law discussing the mere conduit theory, including *Toy King*, does so in the context of preferential transfers. However, the Bankruptcy Court for the Middle District of Florida has already examined initial transferees and mere conduits and stated that the theory under which a transfer is avoided

does not affect the transferee's liability. *Lifecare Tech., Inc. v. Berman Law Firm, P.A. (In re Lifecare Tech., Inc.)*, 305 B.R. 88, 91 (Bankr.M.D.Fla.2003). Section 550 of the Code controls transferee liability regardless of the theory used to avoid the transfer. *Id.*

the Western Union example where A pays Western Union who then pays B. The liability for the avoided transfer, therefore, is within the second party—B, not Western Union."

*Toy King,* 256 B.R. at 146.

Here, TMG was a creditor of the debtor. Under the agreement between the parties, TMG supplied leased employees to the debtor's restaurants in exchange for payment by the debtor. Certainly, TMG entered into this agreement out of self interest and with the intention to make a profit. Page 2 of TMG's Brief in Opposition to Trustee's Motion for Summary Judgment as to Counts II and III of the Complaint acknowledges that the debtor's transfers to TMG were payments for "wages salaries, and taxes which were all incurred prior to the conversion of the Chapter 11 bankruptcy to Chapter 7." According to TMG's own pleadings, the claims against the debtor arose before the conversion.

██ Because TMG is a creditor, TMG cannot be a mere conduit. A true conduit's obligation to the transferee would not arise until the transferor paid the conduit and the amount of the obligation would depend on the amount the transferor paid to the conduit. Unlike a true conduit, TMG's financial obligations were not contingent upon receiving payments from the debtor. TMG expressly assumed the obligation to pay the employees leased to the debtor. In this case, the conduit is the institution through which the debtor made the wire transfers to TMG and TMG is the initial transferee.

██ A party's duty to pay its own debts out of revenue does not make the party a mere conduit. *Whitacre Sunbelt,* 200 B.R. at 425, *citing to Arab Banking,* 904 F.2d at 598–99; *Societe Generale,* 848 F.2d at 1199–1200; *Bonded Financial,* 838 F.2d at 893–94. This principle should ap-

ply even where the party's product is staffing and the party's debts are wages and employment taxes. Leased employees are employees of the lessor, not the lessor's client. *Blasbalg v. Emp. Staffing of Am., Inc.,* 178 B.R. 326, 328 (Bankr.D.R.I.1995). In this case, TMG was the employer, not the debtor. According to the agreement, wages and employment taxes are TMG's obligations, not the debtor's.

If TMG supplied other services or goods to the debtor (instead of staffing services), TMG would have an obligation to pay suppliers and employees regardless of whether TMG received payment from the debtor. Once the debtor's funds were transferred, TMG had dominion and control over the funds. Like any other supplier, TMG could retain the balance of the debtor's funds as profits or use the monies to pay the leased employees' wages. The choice was up to TMG alone. TMG, as an initial transferee, had dominion and control over the post-conversion funds transferred from the debtor. TMG was not acting as a mere conduit.

██ TMG's strongest argument is one of equity. TMG paid the wages and employment taxes to the leased employees with the expectation of prompt repayment by the debtor. The Court sympathizes with TMG because it incurred substantial expenses as a creditor to the debtor, but the relevant statutes control the result in this situation. "Whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington, et al. v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Sections 549 and 550 authorize the trustee to recover post-petition transfers from TMG as an initial transferee. Although the Court understands TMG's position, the Court is bound to follow the

specific provisions of the Bankruptcy Code.

Accordingly, the Motion is granted. Final Judgment shall be entered in favor of the trustee. TMG shall turn over to the trustee the $116,611.62 transferred by the debtor after the conversion to Chapter 7, for administration as property of the estate. TMG shall have 30 days after entry of this order to file an administrative claim in connection with TMG's provision of services in the debtor's Chapter 11 case. A separate judgment consistent with this ruling shall be entered.