**In re S & W INTERNATIONAL FOOD SPECIALTIES, INC., Debtor.**

**Paul Anderson, Jr., Trustee, Plaintiff,**

**v.**

**Sandstone Estates, LLC Tower Financial Services, Inc., Defendant.**

**Bankruptcy No. 02–95250–MHM.
Adversary No. 04–6185.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 10, 2006.

---

Paul H. Anderson, Paul H. Anderson, Jr., Atlanta, GA, for Paul H. Anderson, Jr., Plaintiff.

Richard B. Maner, Richard B. Maner, P.C., Atlanta, GA, for Tower Financial Services, Inc., Defendant.

Stephen J. Sasine, Stephen J. Sasine, Atlanta, GA, for Sandstone Estates, LLC, Defendant.

**ORDER GRANTING TRUSTEE'S MO-TION FOR SUMMARY JUDG-MENT AND DENYING DEFEN-DANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

MARGARET H. MURPHY,
Bankruptcy Judge.

Trustee's complaint in this adversary proceeding seeks to avoid a fraudulent

transfer pursuant to 11 U.S.C. § 548 and to recover funds from Defendant pursuant to 11 U.S.C. § 550. Defendant Sandstone Estates, LLC ("Sandstone") filed a motion for partial summary judgment contending that it is not an initial transferee under § 550(a), and, as a subsequent transferee, is entitled to the defenses in § 550(b).

The material facts are undisputed. Danny Gardner,[1] Debtor's chief financial officer, contracted with Sandstone to purchase a personal residence. The purchase price was $194,900. At closing, Mr. Gardner presented a check from Debtor payable to the closing attorney in the amount of $57,720, which was intended for use as payment of closing costs and the amount of the selling price not covered by the loan Mr. Gardner was obtaining from Defendant Tower Financial Services, Inc.[2] Upon instruction from the closing attorney, whose client was Tower Financial Services, Inc., Mr. Gardner took the check from Debtor to Debtor's bank and obtained a certified check in the same amount payable to the closing attorney. At closing, from the funds Mr. Gardner had delivered to the closing attorney, the closing attorney disbursed $48,345 to Sandstone.[3]

The parties do not dispute that the transaction constitutes a fraudulent transfer under § 548. Sandstone's motion for summary judgment asserts that, under § 550, Danny Gardner is the initial transferee of the funds from Debtor and that Sandstone as a subsequent transferee is protected by the good faith defenses in § 548(b)(1). Trustee opposes Sandstone's motion and asserts that Sandstone is the initial transferee and is, therefore, strictly liable for the value of the avoided transfer.

## DISCUSSION

The parties do not dispute that Debtor's payment in connection with the acquisition of Mr. Gardner's personal residence was a fraudulent transfer, i.e. that transfer was made within one year of the order for relief in Debtor's Chapter 7 case[4] while Debtor was insolvent and that Debtor received less than a reasonably equivalent value in exchange for the transfer. Trustee seeks to recover the amount transferred to Sandstone pursuant to 11 U.S.C. § 550, which provides, in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided. . . .

---

1. Mr. Gardner filed a Chapter 7 bankruptcy petition March 31, 2004, and thus has not been made a party to this adversary proceeding.

2. Tower Financial Services has settled with Trustee and has been dismissed as a party to this adversary proceeding.

3. The balance of the funds, $9,375, was disbursed to Tower Financial Services.

4. The closing occurred October 15, 2001. The order for relief was entered June 14, 2002.

The Bankruptcy Code defines "transfer," § 101(54),[5] but the parties do not dispute that a transfer occurred. The Code does not, however, define "transferee" or "initial transferee," the meanings of which are the focus of the dispute in this proceeding.

■ The most significant case in the U.S. Court of Appeals for the Eleventh Circuit regarding the meaning of "transferee" and "initial transferee" is *Nordberg v. Societe Generale (In re Chase and Sanborn Corp.)*, 848 F.2d 1196 (11th Cir.1988) ("*Societe Generale*"). In that case, the principal of the debtor caused a check in a certain Sum to be issued by the debtor and deposited into the bank account of the non-debtor[6] corporation owned by the principal.[7] That Sum was used to cover another check made payable to a creditor of the non-debtor corporation and that had been presented and cleared the day before the Sum was deposited. After the debtor filed its bankruptcy petition, the trustee sought to recover from the bank the Sum transferred from the debtor.[8] The *Societe Generale* opinion enunciated what came to be called the "conduit" test for determining whether a entity is an initial transferee.[9] The focus of the conduit test is whether the entity receiving the funds from the debtor had sufficient dominion and control over the funds to render it a transferee or was merely a conduit through which the funds passed to the real transferee. The Court described this "control" test as "a very flexible and pragmatic one; ... courts must 'look beyond the particular transfer in question to the entire circumstance of the transactions.'" *Id.* at 1199, *citing Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181–82 (11th Cir.1987).[10] The Court concluded that a bank who receives funds from the debtor for the sole purpose of depositing them into the bank customer's account has no dominion or control over the funds and thus is not a transferee within the meaning of § 550, but is merely a conduit through which the funds pass to the real transferee. The *Societe Generale* opinion cited with approval and relied heavily upon the opinion from the U.S. Court of Appeals for the Seventh Circuit, *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988).

---

5. "'[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." § 101(54).

6. This term is used here to describe the corporation who was not the debtor in the case in which the trustee was seeking to recover the fraudulently transferred proceeds. That corporation may, in fact, have been the debtor in its own separate bankruptcy case.

7. For ease of comparison of the various cases to be discussed, the facts are simplified and the term "principal" is used broadly to mean any person or entity controlling or directing the actions of the debtor.

8. The trustee argued that the paper overdraft created by the clearing of the check to the creditor created a debtor-creditor relationship between the non-debtor corporation and the bank. The Court disagreed.

9. *See also Andreini & Co. v. Pony Express Delivery Services*, 440 F.3d 1296 (11th Cir. 2006).

10. In that case, the focus of the inquiry had been upon whether the *debtor* was a transferor or merely a launderer. A bank account of the debtor, who was already defunct, had been reopened, funds were deposited into the debtor's account by another party, and then the debtor gratuitously transferred the funds to a third party. The Court concluded that the transfer was not avoidable because the debtor never had sufficient control over the funds for them to be considered the debtor's property.

In the *Bonded* case, the principal of the debtor obtained a personal loan from the bank. Later, the debtor sent a $200,000 check to the bank with instructions to deposit it in the account of the principal. Ten days later, the principal instructed the bank to debit his account for $200,000 and apply it to his loan to reduce the outstanding balance. Thereafter, the principal made two more payments to the bank to pay off the loan and the bank released its security interest. After the debtor filed its bankruptcy petition, the trustee sought to recover the transfer from the bank. The *Bonded* court concluded that because the principal had employed a two-step process—transferring the debtor's funds for deposit in the principal's account followed by the principal's transfer of the funds to the bank to pay the loan—the bank was a mere financial intermediary, a conduit, and not the initial transferee. "[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own uses." *Id.* at 893. The *Bonded* court also opined that, if the check from the debtor had arrived with instructions to apply it directly to the amount owed on the loan to the principal, the bank would have been the initial transferee and the trustee could have recovered the funds.

After the decision in the *Societe Generale* case, another of the numerous Chase & Sanborn disputes generated an opinion further refining the interpretation of § 550. In *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588 (11th Cir.1990), the principal of the debtor had obtained a $22 million loan from the bank. That loan was secured by stock owned by the principal and was guaranteed by the debtor and other corporations owned by the principal. The debtor received $369,288 from the proceeds of the loan. The debtor made several payments on the loan directly to the bank. After the debtor filed its bankruptcy petition, the trustee sought to avoid the guarantee and the payments as fraudulent transfers.

With respect to the payments debtor made on the principal's loan, the courts below had determined that the principal was the initial transferee because of his control of the debtor, but the Court concluded that those courts had misapplied the conduit test.[11] The Court stated that the principal's control of the debtor was irrelevant to the initial transferee issue. The focus was on the bank's control of the funds as compared to that of the principal, the debtor or anyone else, when the funds arrived at the bank. The Court held, in accord with the hypothetical posited in the *Bonded* case, that because the funds had been transmitted from the debtor directly to the bank with instructions to apply the funds to the principal's loan, the bank was the initial transferee.

In the case of *Ragsdale v. South Fulton Machine Works, Inc. (In re Whitacre Sunbelt, Inc.)*, 200 B.R. 422 (Bankr.N.D.Ga. 1996)(J. Bihary), the court applied the principles described in *Arab Banking Corp.*, *Societe General*, and *Bonded* to analyze the transaction presented by the trustee's proceeding to recover the proceeds of a fraudulent transfer. In *Whitacre*, the principal owned two corporations. The

11. The *Arab Banking Corp.* case was the first case in which the Court differentiated between the control test enunciated in *Sanchez*, 813 F.2d 1177, which had been employed to determine whether debtor was a transferor, and the control test employed in *Societe Generale*, 848 F.2d 1196, to determine whether the recipient of funds from the debtor was an initial transferee or a mere conduit. The *Arab Banking Corp.* case changed the label of the latter test from "control" to "conduit." *Arab Banking Corp.*, 904 F.2d at 598.

non-debtor corporation[12] owed a substantial debt to a creditor-supplier and, as the non-debtor corporation's financial difficulties increased, the creditor-supplier threatened to discontinue providing supplies to the non-debtor corporation. Therefore, the principal of the debtor caused the debtor to issue a check payable to the principal. The principal then used that check to obtain a certified check payable to the creditor-supplier, which the principal then delivered to the creditor-supplier.[13] Judge Bihary decided that this two-step process rendered the principal the initial transferee, so that the creditor-supplier, as a subsequent transferee, could avail itself of the good faith defenses in § 550(b).

■ Based upon the principles discussed above, the facts in the instant proceeding would appear to be akin to the one-step process, with the closing attorney acting as a mere conduit, rendering Sandstone the initial transferee. Defendant, however, argues that the real estate closing attorney was more than a disbursing agent acting as a mere conduit. Defendant relies upon the case of *McCarty v. Richard James Enterprises, Inc. (In re Presidential Corp.)*, 180 B.R. 233 (9th Cir. BAP 1995), in which the court relied upon the status of an escrow agent to conclude that the principal was the initial transferee. The facts in *Presidential* are very similar to the facts in the instant proceeding. The debtor transferred funds to Chicago Title as escrow agent to facilitate the purchase by the principal of a personal residence in the state of Washington. At closing, the escrow agent disbursed funds to, among others, the realtor who had handled the sale. The Chapter 7 trustee sought to recover the funds disbursed to the real estate agent as a fraudulent transfer. The *Presidential* court denied the relief sought by the Trustee, noting that, at the closing of a sale, the escrow agent is the agent for both parties and has fiduciary duties to both parties. Thus, when the Debtor transferred funds to the escrow agent, the funds were received by the escrow agent as agent for the principal. Thus, the principal was the initial transferee of the funds.

To reflect Georgia law regarding the status and duties of escrow agents, Defendant presented the legal opinion of the actual closing attorney in the instant case and two case citations. Neither of the cases cited by Defendant addresses the status of a closing attorney in a real estate transaction. *Collins v. Norton*, 136 Ga. App. 105, 220 S.E.2d 279 (1975), involved a stock sale and apparently involved a contract relating to the creation of the escrow. The other case, *Carter v. Turbeville*, 90 Ga.App. 367, 83 S.E.2d 72 (1954), concerned an action by a purchaser against a vendor to recover earnest money held by the real estate agent. The court described the real estate agent as an escrow agent with respect to the earnest money. That case also apparently involved a contract that created the escrow.

In the instant proceeding, the parties do not dispute that Tower Financial Services, Inc. was the closing attorney's client. Apparently, no contract existed between the closing attorney and any other party but Tower Financial Services, Inc. A contract and privity between the escrow agent and

---

12. This term is used here to describe the corporation who was not the debtor in the case in which the trustee was seeking to recover the fraudulently transferred proceeds. That corporation was, in fact, the debtor in its own separate bankruptcy case.

13. The principal was also the guarantor of the debt to the creditor-supplier, so that the payment relieved both the non-debtor corporation and the principal of a financial obligation.

the other parties appears to be an essential element of creation of an escrow that would convey agency status for all parties upon the escrow agent. Such a contract apparently existed in *Presidential.* Defendant has produced no such contract in this proceeding.

In the case of *Richardson v. FDIC (In re. M. Blackburn Mitchell, Inc.)*, 164 B.R. 117 (Bankr.N.D.Cal.1994), in rejecting the notion that a principal's control of the conduct of a debtor is sufficient to render the principal the initial transferee, even when funds were transferred directly to the principal's creditor, the court noted that a critical element for characterizing an entity as an initial transferee is actual receipt of the funds at issue.[14] Under the facts in the instant case, Defendant asserts that the "actual receipt" element is satisfied by the payment to the closing attorney, who was acting as Danny Gardner's agent in the closing escrow, rendering Danny Gardner the initial transferee of the funds from Debtor.

 Defendant, however, has failed to present a convincing argument that the closing attorney was acting as Danny Gardner's agent in accepting the funds from Debtor. In *Carter v. Turbeville*, the court quoted at length from 19 Am.Jur. 430:

> In a broad sense, every despositary [sic] of an escrow is the agent of both parties. For the purpose of making delivery upon the performance of the conditions, he is no less the agent of the grantee than the agent of the grantor. He is empowered to aid neither, being merely *the conduit used in the transaction for convenience and safety.* He may therefore be looked upon as a special agent of both parties, with powers limited only to those stipulated in the escrow agreement. Strictly, however, the depositary is not an agent at all, but rather the trustee of an express trust with duties to perform for each of the parties, which duties neither can forbid without the consent of the other. When the depositary knows the terms of the agreement so that he may understand his duties, he acts by virtue of his own powers, and not as agent of anybody. To call him the agent of the parties leads to confusion. It is better to treat him, in accordance with his capacity, as a third party to whom the principal parties to the contract have intrusted certain authority by the escrow agreement. He must look to that intrusted authority for his powers and duties.

90 Ga.App. 367, 371, 83 S.E.2d 72, 75. As noted above, it appears that no escrow agreement exists in this case, creating privity between Danny Gardner and the closing attorney. Even if such an agreement exists, however, based upon the above description of the extremely limited and specifically prescribed duties of an escrow agent, the undersigned must conclude the contractual agency considered by the *Presidential* court can be distinguished from the role of a lender-employed closing attorney, whose role is insufficiently broad to transmogrify the funds flowing from Debtor. The closing attorney in this case acted as nothing more than a financial conduit to facilitate the transaction. The closing attorney was neither an initial transferee nor an agent for Danny Gard-

---

14. The court noted that in such a situation, a principal, into whose hands the funds never come but who nevertheless benefits from the transaction, can be liable under § 550(a)(1) as "the entity for whose benefit such transfer was made." When the principal has filed his own bankruptcy petition, a creditor may be entitled to obtain a determination that the resulting claim against the principal under § 550 is nondischargeable under § 523(a)(2) or (6).

ner. Danny Gardner was not the initial transferee but was, instead, "the entity for whose benefit such transfer was made," who is also a party from whom the trustee can recover an avoidable transfer [15] (but in this case Danny Gardner is also a debtor in bankruptcy). Sandstone was the initial transferee of the funds from Debtor and is, therefore, strictly liable for its return under § 550(a). Accordingly, it is hereby

ORDERED that the motion for partial summary judgment of Defendant Sandstone Estates, LLC, is denied and summary judgment for Trustee is granted. The transfer that is the subject of this adversary proceeding was a fraudulent transfer pursuant to 11 U.S.C. § 548. Defendant Sandstone is the initial transferee of the funds from Debtor and, thus, under 11 U.S.C. § 550(a), the Chapter 7 Trustee is entitled to recover from Sandstone.

The Clerk, U.S. Bankruptcy Court, is directed to serve a copy of this order upon Debtor, Debtor's attorney, Plaintiff's attorney, Defendant's attorney, and the Chapter 7 Trustee.

15. *See discussion in Bonded,* 838 F.2d 890, 895–896. The hypothetical discussed in *Bonded* describes the fact pattern, similar to that in this adversary proceeding but without the conduit, in which the debtor transfers funds directly to the principal's creditor. The *Bonded* court identifies the creditor as the initial transferee and the principal as the "entity for who benefit" the transfer was made. Section 550 assures that, although two parties may be liable for return of the entire transfer, the trustee is entitled only to a single recovery. Section 550 appears to have been constructed to assure recovery for the creditors of the estate.