**In re BRODERICK CO., INC., Debtor.**

**Joseph BRAUNSTEIN, Chapter 7 Trustee of Broderick Co., Inc., Plaintiff,**

**v.**

**UIU HEALTH AND WELFARE FUND, Defendant.**

**Bankruptcy No. 92–11974–CJK.
Adv. No. A94–1144.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 9, 1995.

Christopher T. Vrountas, Boston, MA, for plaintiff.

Joseph G. Butler, Boston, MA, for defendant.

### MEMORANDUM OF DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

CAROL J. KENNER, Bankruptcy Judge.

The principal issue presented in this adversary proceeding is whether health benefits provided by a Union-created employee benefit trust to the Debtor's employees are "new value ... for the benefit of the debtor" within the meaning of 11 U.S.C. § 547(c)(4), the "subsequent new value" defense, where the collective bargaining agreement between the Debtor and the Union required only that the Debtor make payments to the trust, not that it supply the enumerated benefits. The Court holds that such benefits were not for the benefit of the Debtor. The subsequent new value defense is the Defendant trust fund's principal defense to the complaint in this adversary proceeding. By that complaint, the Plaintiff, Joseph Braunstein, as he is Chapter 7 Trustee in this case, seeks to recover as preferential transfers two payments, totalling $61,519.50, made by the Debtor to the Defendant, the Steelworkers Health and Welfare Fund, f/k/a UIU Health and Welfare Fund (hereinafter, "UIU" or "the Fund"), within 90 days before the Debtor filed the petition commencing this bankruptcy case. In its answer, the Fund interposes the affirmative defenses set forth at 11 U.S.C. § 547(c)(1) (contemporaneous exchange for new value), (c)(2) (ordinary course of business), and (c)(4) (subsequent new value). The adversary proceeding is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, the Court concludes that the Trustee is entitled to summary judgment.

### FACTS

In support of their motions, the parties have submitted a joint statement of agreed facts, entitled "Stipulated Facts," and a joint appendix containing seven relevant docu-

ments, including the Deposition of Ronald S. Hoffmann[1] and the Defendant's Response to Plaintiff's First Set of Interrogatories. On the basis of the stipulated facts and the documents in evidence, the Court finds that there is no genuine issue regarding the following facts.

The Defendant, the UIU Health and Welfare Fund, is a trust. It was created by the United Steelworkers of America ("USWA") for the purpose of furnishing various services and benefits to all employees that the USWA represents and who are employees in the collective bargaining units covered by those of the USWA's collective bargaining agreements that provide for such services and benefits. (Joint Appendix, Exhibit B, p. 2; Hoffmann Deposition, p. 10) The beneficiaries of the trust are the covered employees and their dependents. (Hoffmann Deposition, p. 10) During the period relevant to this adversary proceeding, the Fund provided health benefits through collective bargaining agreements to an estimated 30,000 employees employed by a thousand employers. (Hoffmann Deposition, p. 85) The Fund's trustees are appointed by the USWA. (Hoffmann Deposition, p. 8) The Fund, through its trustees, stands in a fiduciary relationship toward the covered employees (and their dependents) who are its beneficiaries. (Hoffmann Deposition, p. 55)

Before its demise in bankruptcy, Broderick Co., Inc. ("Broderick" or "the Debtor"), which was in the steel forging business, entered into a collective bargaining agreement with the United Steel Workers of America and its agent, Local No. 2045 (collectively, "the Union").[2] The Agreement states:

Health, prescription drug, dental, vision, life, accidental death and dismemberment and weekly sickness and accident benefits will be provided through the UIU Health and Welfare Fund at a rate of $292.95 per employee per month beginning October 1, 1989 for three (3) years.

Collective Bargaining Agreement, § 18.02.

On or about August 24, 1989, Broderick, the Union, and the United Steel Workers of

---

1. Mr. Hoffmann is counsel to the Fund.

2. The date of the agreement is not in evidence.

America, Upholstery Division, for the benefit of UIU Health and Welfare Fund, entered into an agreement ("the Supplemental Agreement") supplementing the above collective bargaining agreement.[3] The Supplemental Agreement provided, among other things, that Broderick would make its monthly payments to the UIU Health and Welfare Fund on or before the tenth day of each month in an amount determined, in part, on the basis of the number of employees actively employed in the bargaining unit during the preceding calendar month. The Supplemental Agreement also provided that "in consideration" of those monthly payments, the Union warranted that the Fund would "extend and make available to Employer's [Broderick's] said employees the benefits and services for which such employees . . . are eligible under the benefit plan and By–Laws of said Fund." The Supplemental Agreement also provided, "[n]o benefits will be paid or services furnished to any employee or employees for whom the Employer [Broderick] has not paid the required contribution to the Fund." [4]

During the period from January 1, 1991 through February 28, 1992, the petition date, Broderick paid the following amounts to the Fund on the dates indicated for the benefit months indicated:

| Benefit Month | Amount Owed | Date Paid |
| --- | --- | --- |
| January, 1991 | $35,154.00 | 1/29/91 |
| February, 1991 | 33,982.20 | 3/6/91 |
| March, 1991 | 34,275.15 | 4/3/91 |
| April, 1991 | 37,790.55 | 4/11/91 |
| May, 1991 | 39,255.30 | 5/15/91 |
| June, 1991 | 39,548.25 | 7/1/91 |
| July, 1991 | 36,325.80 | 8/1/91 |
| August, 1991 | 35,446.95 | 9/3/91 |
| September, 1991 | 33,982.20 | 11/13/91 |
| October, 1991 | 33,103.35 | 2/6/92 |
| November, 1991 | 28,416.15 | 2/20/92 |

The payments made on February 6 and 20, 1992, are the two payments at issue in this adversary proceeding. Both were made within ninety days before the petition date. Broderick was insolvent within the meaning of 11 U.S.C. § 101(32) when these payments were made.

On November 27, 1991, and January 14, 1992, Lisa Kapral, an internal auditor for the Fund, sent "dunning letters" to Broderick in an attempt to collect the past due amounts. See Joint Appendix, Exhibits C and D. The Fund had not sent dunning letters to Broderick in an attempt to collect the past due amounts prior to November 27, 1991. The letter of January 14, 1992, requested payment of the delinquent contributions by February 7, 1992, "so that we may bring this matter to a conclusion." Joint Appendix, Exhibit D.

During the period from October 1, 1991 to February 6, 1992, UIU did not provide benefits or services to the members of the Union who were employed by Broderick ("Union Employees") or their dependents for the month of October, 1991, and did not pay any claims made by health care providers for services rendered to Union Employees during the month of October, 1991, until after the receipt of the payment on February 6, 1992. After February 6, 1992, UIU provided benefits or services to the Union Employees and paid claims made by health care provid-

---

**3.** The United Steelworkers of America, Upholstery Division, signed the Supplemental Agreement "for the benefit of UIU Health and Welfare Fund." Supplemental Agreement, signature page.

**4.** UIU filed a proof of claim in the chapter 7 case of Broderick wherein it stated that the "consideration" for the debt which it alleged was owed to it was the collective bargaining agreement.

ers for services rendered to the Union Employees during the month of October, 1991, in the amount of $10,701.75.

During the period from November 1, 1991 to February 20, 1992, UIU did not provide benefits or services to the Union Employees or their dependents for the month of November, 1991, and did not pay any claims made by health care providers for services rendered to Union Employees during the month of November, 1991 until after receipt of the payment on February 20, 1992. After February 20, 1992, UIU provided benefits or services to the Union Employees and paid claims made by health care providers for services rendered to the Union Employees during the month of November, 1991 in the amount of $385.25. In addition, UIU, following receipt of the payment on February 20, 1992, paid to Blue Cross/Blue Shield of Western Pennsylvania ninety-six percent (96%) of the amount received, $27,279.50, in order to obtain certain health insurance benefits for the Union Employees for the month of November, 1991.

On February 28, 1992, Broderick Co., Inc. ("Broderick" or "the Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 1, 1992, the case was converted to one under Chapter 7 of the Bankruptcy Code, whereupon the Plaintiff was appointed Chapter 7 Trustee in the case. The transfers at issue in this adversary proceeding enabled UIU to receive more than it would have received if the (1) the case were a case under Chapter 7 of the Bankruptcy Code, (2) the transfers had not been made, and (3) UIU received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

### PLAINTIFF'S CASE UNDER § 547(b)

The Trustee bears the burden of proving that the transfers at issue are avoidable under 11 U.S.C. § 547(b). 11 U.S.C. § 547(g). Thus he must establish the following six elements with respect to each of the disputed payments:

1. there was "a transfer of an interest of the Debtor in property," § 547(b);

2. the transfer was "to or for the benefit of a creditor," § 547(b)(1);

3. the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made," § 547(b)(2);

4. the transfer was "made while the debtor was insolvent," § 547(b)(3);

5. the transfer was "made on or within 90 days before the filing of the petition," § 547(b)(4)(A); and

6. the transfer enables the creditor to receive more than it would receive if (1) the case were a case under Chapter 7 of the Bankruptcy Code, (2) the transfer had not been made, and (3) the creditor received payment of its debt to the extent provided by the provisions of the Bankruptcy Code. § 547(b)(5).

The Trustee seeks summary judgment with respect to the avoidability of the transfers under § 547(b). As the party bearing the burden of proof with respect to the various elements of § 547(b), the Trustee must support his motion with admissions or evidence sufficient to establish the existence of each element of his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If he does so, the burden then shifts to the Defendant to demonstrate the existence of a genuine issue of material fact as to at least one essential element of the Trustee's case.

The Defendant has not responded to the Trustee's motion for summary judgment and, in its own motion for summary judgment, does not address the elements of § 547(b). On the basis of the facts to which the Defendant has stipulated, the Defendant clearly has conceded four elements of the Trustee's cause of action: that the Debtor made the transfers at issue in the amounts alleged; that the transfer was for or on account of an antecedent debt owed by the debtor before such transfer was made; that the transfers occurred within ninety days before the filing of the petition; and that the Debtor was insolvent when the transfers were made.

The remaining two elements—the requirements of § 547(b)(1) and (b)(5)—are less clear. The first is subsection (b)(1), the requirement that the transfer have been made "to or for the benefit of a creditor."

This subsection can be satisfied in either of two ways: the payment can have been made either to a creditor or for the benefit of a creditor. In this instance, the payments were made to the Fund for the benefit of the employees covered by the collective bargaining agreement. The employees bargained for the payments, and the Fund received them as a fiduciary with the obligation to administer them for the employees' benefit. Therefore, regardless of which party is the creditor—the Fund or the employees—subsection (b)(1) is satisfied: either the Fund is the creditor, in which case the Trustee has shown that the payments were made to a creditor; or the employees are the creditors, in which case the Trustee has shown that the payments were made for the benefit of the creditors.

■ The second is § 547(b)(5), the requirement that the transfer have enabled "the creditor" to receive more than it would receive if (1) the case were a case under Chapter 7 of the Bankruptcy Code, (2) the transfer had not been made, and (3) the creditor received payment of its debt to the extent provided by the provisions of the Bankruptcy Code. This requirement has been satisfied as to the Fund, but not as to the employees (as to whom the Court has no evidence). Therefore, the Trustee can be deemed to have satisfied this requirement only if the Fund itself qualifies as a creditor with respect to these payments.

For purposes of the Bankruptcy Code, including § 547, "creditor" is defined as including any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). And "claim" is defined as including any "right to payment." 11 U.S.C. § 101(5)(A). The issue presented is whether Fund had a prepetition right to payment. The Fund was not itself a party to the collective bargaining agreement and did not itself pay consideration to the Debtor in exchange for the monthly payments. Rather, the principal obligees were the members of the collective bargaining unit; they bargained for the payments and, with their labor, supplied the consideration for the pay-

ments. Therefore, the members of the collective bargaining unit were creditors with respect to these payments. However, as the Fund's own counsel explained, an employee benefit trust, such as the Fund, is itself obligated and authorized by ERISA[5] to pursue and collect contributions that employers are required under collective bargaining agreements to pay to the trust. (Hoffmann Deposition, pp. 54–56) Therefore, by virtue of its power to collect these payments, the Fund itself had a "right to payment" and is a creditor for purposes of § 547.

In sum, as to the Trustee's case under § 547(b), the Court concludes that there are no genuine issues of material fact, that the Trustee has carried his burden with respect to each element of § 547(b), and that the Trustee's motion for summary judgment should be allowed as to his case in chief under § 547(b).

### AFFIRMATIVE DEFENSES

The focus now shifts to the three affirmative defenses the Fund has raised under § 547(c): the "contemporaneous exchange for new value" defense, § 547(c)(1); the "ordinary course of business" defense, § 547(c)(2); and the "subsequent new value" defense, § 547(c)(4). The Trustee seeks summary judgment as to all three; the Fund seeks summary judgment only on the strength of the last, the new value defense under § 547(c)(4).

#### a. Ordinary Course of Business: Section 547(c)(2)

■ In order to qualify for the ordinary course of business defense, a payment must, among other things, have been made in the ordinary course of business or financial affairs between the debtor and the transferee. 11 U.S.C. § 547(c)(2)(B). The Trustee contends that the Fund cannot satisfy this requirement because the evidence shows that, while the Debtor ordinarily made its payments to the Fund within a month of their due date, the subject payments were four months overdue when paid. Also, the evidence shows that the only dunning letters ever sent by the Fund to the Debtor were

---

**5.** The Employee Retirement Income Security Act of 1974.

sent for the payments at issue. Therefore, the Trustee concludes, the payments were not made in the ordinary course of business between the Debtor and the Fund. The Fund does not respond to this argument.

The Court finds that the evidence on which the Trustee relies is uncontroverted, that there are no genuine issues of material fact, and that the Trustee's argument is well-founded. In view of the unusual lateness of the payments and of the dunning letters, the Court holds, as a matter of law, that the payments fell outside of the ordinary course of business between the Debtor and the Fund. Accordingly, the Trustee's motion for summary judgment should be allowed as to this defense.

**b. *Subsequent New Value: Section 547(c)(4)***

■ The Fund also asserts the "subsequent new value" defense, § 547(c)(4), which states:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). The Fund contends that, by providing benefits to the covered employees after the Debtor made the payments at issue, the Fund gave new value for the benefit of the Debtor. The benefits were "for the benefit of the debtor," says the Fund, because, by providing those benefits to the employees, the Fund was satisfying the Debtor's obligation under the collective bargaining agreement to provide insurance coverage to the employees. The Trustee disagrees, taking the position that the Debtor's obligation under the collective bargaining agreement was satisfied and discharged when it made the payments to the Fund; therefore, the Fund's provision of benefits to the employees was not for the benefit of the Debtor. Both parties state that there are no genuine issues of material fact, and each contends that it is entitled to judgment as a matter of law on this defense.

The Court finds that there are no genuine issues of material fact. Under the Collective Bargaining Agreement, the Debtor's obligation to provide benefits was set forth as follows:

Health, prescription drug, dental, vision, life, accidental death and dismemberment and weekly sickness and accident benefits will be provided through the UIU Health and Welfare Fund at a rate of $292.95 per employee per month beginning October 1, 1989 for three (3) years.

Collective Bargaining Agreement, § 18.02. This section does not obligate the Debtor to supply the enumerated benefits to the employees; it merely requires the Debtor to make monthly payments to the Fund. From the nature of the relation of the Fund to the Union, and from the Supplemental Agreement, it is clear that upon payment of the required monthly payment, the provision of benefits was out of the Debtor's hands. The Fund was not an agent or instrumentality of the Debtor and was not under the Debtor's control. Rather, the Fund was created by the employees' union for the purpose of providing benefits to the employees. In the Supplemental Agreement, it is the *Union*, not the Debtor, that warrants that the Fund will provide the promised benefits. Moreover, the precise benefits to be supplied are nowhere spelled out in the collective bargaining agreement or in the Supplemental Agreement. Rather, the Supplemental Agreement states that the benefits to be supplied are those enumerated in the Fund's own benefit plan and by-laws. The agreements quantify the Debtor's obligation with respect to benefits only by specifying the manner in which the monthly payment is to be calculated. From these provisions, I conclude that the Debtor's obligation to the employees under the collective bargaining agreement was satisfied upon payment to the Fund of the monthly payments it required. Having made these payments for the months in question, the Debtor was under no independent or

continuing obligation to supply the benefits enumerated in § 18.02 of the collective bargaining agreement. It follows that the Fund's provision of the enumerated benefits to the employees did not satisfy an outstanding obligation of the Debtor and thus did not provide a benefit to the Debtor.

The Court concludes as a matter of law that the Fund's provision of benefits to the employees did not constitute "new value ... for the benefit of the debtor" within the meaning of § 547(c)(4). Therefore, the Fund's motion for summary judgment, which seeks summary judgment solely on the strength of this affirmative defense, must be denied. Conversely, the Trustee's motion for summary judgment must be allowed with respect to this defense.

### c. *Contemporaneous Exchange for New Value: Section 547(c)(1)*

■ The last defense asserted by the Fund is the "contemporaneous exchange for new value" defense, set forth at § 547(c)(1). This defense provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). The Fund's Answer does not specify the alleged facts on which this defense is based, but in its answer to the Trustee's second interrogatory, the Fund states its basis for invoking this defense:

The transfers in question were payments of the contributions required by the contract for the months of October 1991, and November 1991. The terms of the supplementary agreement and UIU's policy was

that benefits would not be provided for months in which the required contribution was not paid, until such time as the contribution was made. UIU did not provide benefits for the months of October and November, 1991 until after the required employer contributions for those months were received on February 6, 1992, and February 20, 1992, respectively.

(Joint Appendix, Exhibit 7, p. 2) Thus the alleged "new value" that forms the basis of the Fund's 547(c)(1) defense is the same as the new value that was the basis of the Fund's defense under § 547(c)(4). The Trustee argues that he is entitled to summary judgment as to the (c)(1) defense for three reasons. First, as was discussed above, the Fund did not give new value to the Debtor. Second, the exchange of payments for new value (if any was given) was not contemporaneous. And third, the Fund and the Debtor did not intend for the payments to be a contemporaneous exchange for new value. For the same reasons as were set forth above with respect to the "subsequent new value" defense, the Court concludes that there are no genuine issues of material fact, that the Fund did not give new value to the Debtor,[6] and, therefore, that the Trustee is entitled to summary judgment as to this defense.

### CONCLUSION

Having determined that the Trustee is entitled to summary judgment with respect to his case in chief under § 547(b) and with respect to each of the affirmative defenses asserted by the Fund, the Court concludes that the Trustee's Motion for Summary Judgment should be allowed and that the Fund's Motion for Summary Judgment should be denied. Judgment will enter for the Plaintiff in the amount of $61,519.50, plus interest at the statutory rate from February 25, 1994, the date on which this adversary proceeding was commenced.[7]

---

6. Having so concluded, I need not address the Trustee's second and third arguments as to this defense.

7. The applicable interest rate is the rate prescribed in 28 U.S.C. § 1961(a). With respect to

a preference recovery under 11 U.S.C. § 547(b), interest accrues from the date of demand, but if no demand was made then from the date on which the adversary proceeding was commenced. *In re H.P. King Co., Inc.*, 64 B.R. 487, 490–92 (Bankr.E.D.N.C.1986).

## ORDER

For the reasons set forth above, the Trustee's Motion for Summary Judgment is hereby ALLOWED, and the Defendant's Motion for Summary Judgment is hereby DENIED. Judgment shall enter for the Trustee in the amount of $61,519.50 plus int. at 7.03% from 2/25/94.