**In re LENOX HEALTHCARE, INC., et al., Debtors.**

**Charles M. Golden, Chapter 11 Trustee, Plaintiff,**

v.

**The Guardian, Defendant.**

**Bankruptcy No. 01–2288 (MFW).
Adversary No. 03–54314.**

United States Bankruptcy Court, D. Delaware.

June 1, 2006.

Noel C. Burnham, Steven Maniloff, Montgomery, McCracken, Walker & Rhoades, LLP, Wilmington, DE, for The Guardian Life Insurance Company of America.

Richard J. Squadron, Smith Giacometti, LLC, Wilmington, DE, for Charles M. Golden, Chapter 11 Trustee of the Estates of Lenox Healthcare, Inc., et al.

### MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion for Summary Judgment (the "Motion") filed by The Guardian Life Insurance Company of America ("Guardian") seeking a determi-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

nation that five payments transferred from Lenox Healthcare, Inc. (the "Debtor") to Guardian between April 19 and July 25, 2001, cannot be avoided and recovered by the Trustee pursuant to sections 547, 548, 549, and 550 of the Bankruptcy Code. The Trustee opposes the Motion, asserting that there are material issues of disputed fact. For the reasons set forth below, the Court will grant partial summary judgment in favor of Guardian with respect to the April 19 and May 16, 2001 payments. The Court also will grant partial summary judgment with respect to the remaining payments on Count 1 of the Amended Complaint (Avoidance of Preferential Transfers).

## I.  BACKGROUND

### A.  The Debtor's Employee Benefit Plans

The undisputed facts are as follows. Prior to seeking bankruptcy protection on July 10, 2001 (the "Petition Date"), the Debtor maintained certain health and dental employee benefit plans (the "Plans") qualified under the Employee Retirement Income Security Act of 1974 ("ERISA"). The cost of the Plans was paid by employer contributions and employee payroll deductions.

Pursuant to the 1998 Administrative Services Agreement between the Debtor and Guardian, Guardian performed certain administrative services for the Plans in exchange for a fee. Those services included determining the eligibility of claimants for the Plans' benefits and paying daily eligible claims on behalf of the Debtor. Guardian agreed to invoice the Debtor monthly (the "Monthly Claim Reimbursement Invoice") for the claims paid by Guardian the previous month. Upon receipt of the Monthly Claim Reimbursement Invoice, the Debtor agreed to remit a check for the full balance due.

Between April 19 and July 25, 2001, the Debtor transferred the following payments (collectively, the "Transfers") to Guardian:

| AMOUNT | CHECK NUMBER | DATE |
|---|---|---|
| $108,852.04 | 367516 | 04/19/01 |
| $161,212.30 | 368383 | 05/16/01 |
| $131,204.72 | 369005 | 06/11/01 |
| $201,389.39 | 370044 | 07/09/01 |
| $147,145.88 | 370219 | 07/25/01 |

### B.  Procedural History

On July 10, 2003, Charles M. Golden, the chapter 11 trustee (the "Trustee"), filed a complaint (the "Original Complaint") against Guardian seeking to avoid and recover the June 11, July 9, and July 25 payments as alleged preferential, fraudulent, and unauthorized post-petition transfers. The Trustee amended the Original Complaint (the "Amended Complaint") on April 4, 2005, to include the April 19 and May 16 payments (the "Additional Transfers").

On November 28, 2005, Guardian filed the instant Motion, arguing that: (1) the Transfers were not property of the estate; (2) Guardian was not an initial transferee but a "mere conduit"; the Trustee cannot satisfy his burden of proof under section 547(b)(5); and (4) the avoidance of the Additional Transfers is time-barred by the statute of limitations set forth in section 546(a). The Trustee opposed the Motion, arguing that the Additional Transfers relate back to the date of the Original Complaint and, therefore, are not time-barred. Additionally, the Trustee asserted that the Transfers consisted partially of property of the estate, and that the question of whether the Transfers were comprised wholly or partially of estate property is a disputed issue of material fact precluding summary judgment. The Motion has been fully briefed and is ripe for decision.

## II.  JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(b)(1) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

### III. *DISCUSSION*

#### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); FED. R. BANKR.P. 7056. The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The burden then shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) is clear that the non-moving party "must set forth *specific* facts showing that there is a genuine issue for trial." *Id.* (emphasis added). The non-moving party may not rest on the pleadings or on mere assertions of disputed facts and must produce more than "a scintilla of evidence in support of [its] position...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982) (noting that the non-moving party must supplement the record and not rest "merely upon bare assertions, conclusory allegations or suspicions"); *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990) (holding that "unsupported allegations" and "unsworn statements of counsel" will not satisfy the burden of Rule 56(e)). In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

#### B. *Property of the Estate*

■ As a threshold matter, for a trustee to exercise avoidance powers under sections 547, 548, and 549, there must have been a transfer of property of the estate. *See Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("[I]f the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated.").

■ Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of section 541(a)(1) is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Bankruptcy Code expressly states, however, that property in which a debtor holds only bare legal title is not property of the estate:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under [section 541(a)(1) or (2) ] only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). Because property a debtor holds in trust for another is not property of the estate, transfers of such property cannot be avoided. *See, e.g., Begier*, 496 U.S. at 59, 67, 110 S.Ct. 2258; *Marrs–Winn Co. v. Giberson Elec., Inc.*

*(In re Marrs–Winn Co.)*, 103 F.3d 584, 589 (7th Cir.1996); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231, 235 (Bankr.D.Del. 2000).

In support of the Motion, Guardian argues that, because the Transfers consisted of employee payroll deductions and employer contributions, the Debtor never transferred property of the estate. Rather, it transferred property it held in trust for its employees. According to Guardian, a trust was imposed upon the Transfers when the employee wages were withheld and when the employer contributions were paid to Guardian. Because the Transfers consisted wholly of trust funds, Guardian argues that the Transfers cannot be avoided as a matter of law.

The Trustee does not disagree that trust funds are unavoidable, noting in his response that:

> to the extent that the allegedly preferential transfers at issue here were trust funds belonging to the Debtor, and given to Guardian to fund the Benefit Funding Account for the purpose of funding the Debtor's self funded Employee benefits payment program, they are probably not recoverable by the Debtor as preference payments.

According to the Trustee, however, the Transfers also included administrative fees paid to Guardian. Those portions, the Trustee argues, are avoidable under sections 547, 548, and 549. Because he is unable to determine how much of the Transfers were administrative fees, the Trustee asserts there is a genuine issue of material fact precluding a grant of summary judgment in favor of Guardian. In support of this contention, the Trustee points to the Administrative Services Agreement (in particular, Appendix IV) in which the Debtor agreed to pay Guardian administrative fees for services rendered.

Guardian denies that any portion of the Transfers consisted of administrative fees and asserts that the administrative fees were separately billed to, and paid by, each of the individual facilities owned and/or operated by the Debtor. In support of its argument, Guardian has submitted: (1) its June 2001 invoice sent to the Palmer House Alzheimer's Center, a participating facility in the Debtor's group plan, seeking payment of administrative fee premiums; and (2) its August 13, 2001, letter to the Debtor, detailing the amount of premiums owed by forty divisions within the Debtor's group plan. In addition, Guardian has submitted copies of: (1) the five checks representing the Transfers; (2) the Monthly Claim Reimbursement Invoices for February through July 2001; and (3) the Monthly Financial Transaction Register and Medco [2] report for May 2001, both of which support in detail the amounts shown on the May 2001 Monthly Claim Reimbursement Invoice.[3] It is clear

---

**2.** Guardian subcontracted to Medco the administration of the prescription drug portion of the Plans. Each Monthly Claim Reimbursement Invoice includes prescription drug claims paid by Medco and health and dental claims paid by Guardian.

**3.** Normally documents may not be considered when deciding a Rule 56 motion, unless they are authenticated by affidavit. *See, e.g., Bouriez v. Carnegie Mellon Univ.*, No. Civ. A. 02–2104, 2005 WL 2106582, at *8, 2005 U.S. Dist. LEXIS 18324, at *25 (W.D.Pa. Aug. 26,

2005) ("Absent from [Federal Rule of Civil Procedure 56(c)] is documentary evidence.... An affidavit is one of many ways that documentary evidence is authenticated for admissibility."). Although Guardian relies heavily on unsworn and unauthenticated documentary evidence, this Court may consider the evidence in light of the Trustee's failure to object to its admissibility. *See, e.g., Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 437 n. 12 (3d Cir.1996) ("We agree with the plaintiffs and our sister courts of appeals that Rule 56 defects are waived

from Guardian's uncontested submissions that the Transfers at issue here do not include administrative fees. Nonetheless, the Court cannot conclude that a trust was imposed upon the entire amount of the Transfers.

■ It is true that employee wages which are withheld for the purpose of contributing to an employee benefit plan are assets of the plan held in trust for the employees from the moment they are withheld. *See Chao v. Lexington Healthcare Group, Inc. (In re Lexington Healthcare Group, Inc.),* 335 B.R. 570, 576–77 (Bankr. D.Del.2005) (imposing a trust upon employee wages withheld for the benefit of an ERISA qualified 401(k) plan); *In re College Bound, Inc.,* 172 B.R. 399, 403 (Bankr. S.D.Fla.1994) ("Payment to the Plan is not the event that triggers transfer of property from the Debtor to the Plan. Instead, once the employees are paid and the employee contributions withheld, the withheld monies are deemed to be held in trust for the Plan[.]"). *See also United States v. Grizzle,* 933 F.2d 943, 946–47 (11th Cir. 1991); *Prof'l Helicopter Pilots Ass'n v. Denison,* 804 F.Supp. 1447, 1453–54 (M.D.Ala.1992); *In re U.S. Lan Sys. Corp.,* 235 B.R. 847, 853–54 (Bankr.E.D.Va.1998). Therefore, the Court concludes that the employee contributions never became property of the estate but were always property of the employees held in trust by the Debtor. Payment of these contributions is not avoidable. *See, e.g., Begier,* 496 U.S. at 67, 110 S.Ct. 2258 (concluding that taxes withheld from employees' wages were held in trust by debtor and payment of them to IRS was not avoidable).

■ In contrast, employer contributions to an employee benefit plan are not held in trust until they are actually transferred to the employee benefit plan. *College Bound,* 172 B.R. at 403 (holding that until employer actually delivered its contributions to an employee benefit plan, the contributions remained the employer's property); *Denison,* 804 F.Supp. at 1453. *See also Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc.,* 828 F.2d 710, 714 (11th Cir.1987) (finding that the president's decision not to pay insurance premiums did not violate his fiduciary duty as the health plan trustee because "until monies were paid by the [president] to the plan there were no assets in the plan under the provisions of ERISA."). Consequently, the payment of the Debtor's portion of the contributions is a transfer of property of the Debtor that may be avoided. *See, e.g., Braunstein v. UIU Health & Welfare Fund (In re Broderick Co.),* 177 B.R. 430, 431–34 (Bankr.D.Mass.1995) (entering judgment for chapter 7 trustee seeking to avoid and recover employer contributions made pre-petition to an employee benefit trust fund).

Guardian argues, however, that once a debtor/employer delivers its contributions to an ERISA qualified plan, the contributions are unable to be avoided and recovered, relying on the *College Bound* decision. Guardian's reliance on *College Bound* is misplaced. The Court in *College Bound* was not addressing the question of whether payment of employer contributions is avoidable as a preference or fraudulent conveyance. Instead, it was considering a request of the ERISA plan trustee for turnover of the contribution owed by the employer. The *College Bound* Court

where they are not raised in the [trial] court."); *Tesler v. Certain Underwriters at Lloyd's London (In re Spree.com Corp.),* 295 B.R. 762, 765 n. 2 (Bankr.E.D.Pa.2003) (considering, in the absence of an objection, documents attached to the parties' motions for summary judgment that were "without the proper certifications and/or affidavits necessary to transform the documents into an admissible record.").

denied that request, holding that a trust is not imposed on the employer's contributions and the plan has "no rights to the contributions *until* they are actually paid." 172 B.R. at 403 (emphasis added).

That decision supports the conclusion that, in this case, to the extent the Transfers constituted employer contributions, they were property of the estate at the time of transfer and only became trust assets after the transfer. Thus, the Trustee may seek to avoid and recover the employer contributions under sections 547, 548, 549, and 550. *Begier,* 496 U.S. at 58, 110 S.Ct. 2258 (holding that "property of the debtor" can be "best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings").

Consequently, the Court concludes that the Trustee may not avoid the portion of the Transfers that constitutes employee contributions but may be able to avoid the portion that constitutes the Debtor's contributions. A material issue remains in dispute as to which portion of the Transfers were employee withholdings and which were the Debtor's contributions.

### C. *Mere Conduit Defense*

Guardian next argues that summary judgment is appropriate because it was a "mere conduit," not an initial transferee. Under section 550(a), a trustee may recover transfers avoided under sections 547, 548, and 549 from "the initial transferee of such transfer[s] or [from] the entity for whose benefit such transfer[s were] made[.]"

A defense to avoidance is available to those entities which are "mere conduits" of the avoided transfers. *See, e.g., Lyon v. Contech Constr. Prods., Inc. (In re Computrex, Inc.),* 403 F.3d 807 (6th Cir.2005); *Christy v. Alexander & Alexander of N.Y.*

*Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 130 F.3d 52 (2d Cir.1997); *Jenkins v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.),* 81 F.3d 592 (5th Cir.1996); *Argus Mgmt. Group v. GAB Robins, Inc. (In re CVEO Corp.),* 327 B.R. 210 (Bankr.D.Del.2005); *Official Comm. of Unsecured Creditors v. Guardian Ins. 401 (In re Parcel Consultants, Inc.),* 287 B.R. 41 (Bankr.D.N.J.2002); *Official Comm. of Unsecured Creditors v. United States Dep't of Labor (In re Dairy Stores, Inc.),* 148 B.R. 6 (Bankr.D.N.J.1992).

To be a "mere conduit," a defendant must "establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use." *CVEO,* 327 B.R. at 216. *See, e.g., Jet Fla., Inc. v. Airlines Clearing House, Inc. (In re Jet Fla. Sys., Inc.),* 69 B.R. 83, 84–85 (Bankr.S.D.Fla. 1987) (finding that a clearinghouse used to settle and reconcile accounts between air carriers was a mere conduit rather than an initial transferee with respect to settlement payments received from the debtor for the purpose of disbursement); *Nedlloyd, Inc. v. Universal Trading Corp. (In re Black & Geddes, Inc.),* 59 B.R. 873, 874–75 (Bankr.S.D.N.Y.1986) (concluding that a collection agency was merely a conduit, collecting payments due to its principal); *Kaiser Steel Res., Inc. v. Jacobs (In re Kaiser Steel Corp.),* 110 B.R. 514, 520–21 (D.Colo.1990) (holding stock broker a conduit for stock redemption payments it received on behalf of its customers); *Dairy Stores,* 148 B.R. at 9 (determining that the Department of Labor, which brought suits to recover back wages for employees, enjoyed no benefit from the recoveries and merely acted as a custodian).

104

■ Where a transferee is "not under any contractual or other obligation to use [transferred funds] for the benefit of [third parties,]" but rather, may use the funds freely, it is not a "mere conduit." *Official Comm. of Unsecured Creditors v. U.S. Relocation Servs. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 202 (Bankr.S.D.N.Y. 2005) (holding that the reimbursement relationship between the debtors and the transferee precluded a "mere conduit" defense). *See also Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive Corp.)*, 321 B.R. 388, 395 (Bankr.D.Del. 2005) (permitting the recovery of transfers from a travel agent who received payments from the debtor, deposited them into its general operating account, and distributed the money as it saw fit); *Richardson v. I.R.S. (In re Anton Noll, Inc.)*, 277 B.R. 875, 880–81 (1st Cir. BAP 2002) (holding that defendant gained dominion and control upon delivery of a check payable to "cash" because the check became negotiable upon the defendant's receipt); *Meininger v. TMG Staffing Servs., Inc. (In re Cypress Rests. of Ga., Inc.)*, 332 B.R. 60, 62–66 (Bankr.M.D.Fla.2005) (rejecting the "mere conduit" defense where debtor reimbursed staffing agency for wages it paid in advance to staff employees because the agency's obligation to pay the employees arose regardless of whether the debtor reimbursed it; the monies reimbursed did not simply flow through to the employees).

■ In the instant case, Guardian argues that it did not have a beneficial interest in the Transfers and that it was a "mere claims paying agent," required to receive the Transfers in trust for the Debtor's employees or for the healthcare providers rendering medical services.

The Trustee did not respond to Guardian's "mere conduit" argument. The Court concludes, however, that the "mere conduit" defense is not available to Guard-ian. The documents presented by Guardian demonstrate that the Transfers were payments from the Debtor to reimburse Guardian for its advance payment of employee claims. The Transfers did not merely flow through Guardian to the health care providers.

Guardian's own Motion refers to the Transfers as "claim reimbursement payments." In addition, the Administrative Services Agreement did have an option, not chosen by Guardian, by which the Debtor could have established a funding account from which Guardian could have drawn checks and forwarded them directly to the employees or to the Debtor for distribution. A choice of this option would have supported Guardian's "mere conduit" defense because it would have required the Debtor to transfer funds to its benefit funding account *before* Guardian paid employee claims. *See Cypress Rests.*, 332 B.R. at 65 ("A true conduit's obligation to the transferee would not arise until the transferor paid the conduit and the amount of the obligation would depend on the amount the transferor paid to the conduit.").

The option actually chosen, however, required Guardian to pay employee claims first and then be reimbursed by the Debtor after submitting its Monthly Claim Reimbursement Invoice.

As a result of the paying arrangement between the Debtor and Guardian, the Court concludes Guardian was not a mere conduit for any third party. It was not under any obligation to use the Transfers for the benefit of the Plans' claimants and could use the Transfers for " 'whatever purpose [it wished], be it to invest in lottery tickets or uranium stocks.' " *CVEO*, 327 B.R. at 216 (quoting *Anton Noll*, 277 B.R. at 879). *See also U.S. Interactive*, 321 B.R. at 396 ("The essence of dominion is the power to control or direct re-

sources."). *Cf. Parcel Consultants,* 287 B.R. at 46–47 (determining that Guardian, which invested employee and employer contributions to a 401(k) plan, did not exercise dominion and control over the funds transferred to it because Guardian was required to distribute the contributions per the contract with the debtor).

Moreover, Guardian's advance payment of employee claims transformed Guardian into a creditor of the Debtor. Courts have made it clear that to be a conduit, one cannot be a creditor and receive a payment to satisfy a debt—this is the "hallmark" of a preferential transfer. *360networks,* 338 B.R. at 202. *See also Dairy Stores,* 148 B.R. at 9 (noting that a preferential transfer cannot exist without an extension of credit); *Fonda Group, Inc. v. Marcus Travel (In re Fonda Group, Inc.),* 108 B.R. 956, 959–60 (Bankr.D.N.J. 1989) (determining that the reimbursement relationship between the defendant and the debtor made the defendant a "direct beneficiary," satisfying section 547(b)(1)); *Cypress Rests.,* 332 B.R. at 65 ("Because [the defendant] is a creditor, [the defendant] cannot be a mere conduit.").

Guardian argues that because the Debtor was solely liable for employee claims and Guardian was merely the Debtor's agent, it clearly was a conduit. However, Courts have held that the existence of a principal-agent relationship is not dispositive in establishing the "mere conduit" defense. *See 360networks,* 338 B.R. at 203 n. 10; *Finley, Kumble,* 130 F.3d at 58–59.

Because the record establishes that the Transfers were reimbursements to Guardian for its prior payment of employee claims, Guardian's dominion and control as well as its creditor status defeat the "mere conduit" defense, precluding a grant of summary judgment on this ground.

### D. *Statute of Limitations*

Guardian further argues that it is entitled to partial summary judgment with respect to the Additional Transfers because they are time-barred by the two-year statute of limitations in section 546(a). The Additional Transfers were first challenged by the Trustee in the Amended Complaint filed on April 4, 2005. Under section 546(a), the statute of limitations for actions under sections 547 and 548 expired on July 10, 2003. Although the Original Complaint was filed within the required time period, the Amended Complaint was not. Therefore, for the Additional Transfers to survive, they must relate back to the date of the Original Complaint. *See* FED.R.CIV.P. 15(c); FED. R. BANKR.P. 7015. *See also Rouge Steel Co. v. Omnisource Corp. (In re Rouge Indus., Inc.),* No. 03–13272, 2006 WL 148946, 2006 Bankr.LEXIS 61 (Bankr.D.Del. Jan. 19, 2006); *Peltz v. CTC Direct, Inc. (In re MBC Greenhouse, Co.),* 307 B.R. 787 (Bankr.D.Del. 2004).

To relate back, the Additional Transfers must arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the" Original Complaint. FED.R.CIV.P. 15(c)(2). Because the relation back analysis focuses on whether the fact situation in the original complaint provided notice to the defendant that additional allegations would be pursued, Rule 15(c)(2) will be satisfied if an amended complaint " 'merely adds a new legal ground for relief, changes the date and location of the transaction alleged, . . . spells out the details of the transaction originally alleged, . . . [or] merely increas[es] the *ad damnum* clause. . . .' " *Coan v. O & G Indus., Inc. (In re Austin Driveway Servs., Inc.),* 179 B.R. 390, 395 (Bankr.D.Conn.1995) (alterations in original) (quoting *Pereira v. H.K. & Shanghai*

*Banking Corp. (In re Kam Kuo Seafood Corp.)*, 67 B.R. 304, 306 (Bankr.S.D.N.Y. 1986)). Additionally, an amended complaint may relate back to the original complaint if the facts alleged in the original complaint indicate "an underlying unifying scheme or course of conduct." *Id.* at 399. *See also Peltz*, 307 B.R. at 792–93.

In the preference context, to determine whether additional transfers relate back to those alleged in the original complaint, Courts have examined several factors. *See, e.g., Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379, 390–91 (Bankr.N.D.Ill.1994) (considering whether the frequency and amount of the transfers indicate a scheme or course of conduct); *Grella v. Zimmerman (In re Art & Co., Inc.)*, 179 B.R. 757, 763 (Bankr.D.Mass. 1995) (finding that facts alleged in original complaint gave defendant fair notice that trustee was challenging payments throughout the course of defendants' relationship with the debtor); *Rouge Indus.*, No. 03–13272, 2006 WL 148946, at *4, 2006 Bankr.LEXIS 61, at *11 (finding that original complaint did not allege specific facts but mostly relied upon the statutory language of sections 547 and 550, precluding fair notice to defendant); *Coan*, 179 B.R. at 399–400 (considering whether there exists sufficient commonality between the facts alleged in the original complaint and those in the amended complaint and concluding that the third amended complaint did not relate back because it added an indirect transfer from a new third party never identified in previous complaints).

The Trustee argues that the Additional Transfers relate back to the date of the Original Complaint because they arose out of the same transaction—the Administrative Services Agreement. The Court disagrees. The Amended Complaint challenged new Transfers; it did not simply set forth new legal grounds or facts on which to avoid and recover the original Transfers. *Coan*, 179 B.R. at 395 ("[W]hen the amended pleading does not rely upon the facts and transactions originally pled or plead them more specifically, but rather is based on new facts and different transactions, the proposed amendment will not relate back to the original pleading.").

The Original Complaint did not set forth any specific facts which could have encompassed the Additional Transfers; rather, it simply listed the dates and amounts of three payments and the elements of sections 547 and 548. The vague language of the Original Complaint "can hardly be said [to] . . . indicate to [Guardian] that [the Trustee's] prayer was to avoid all transfers made during the preference period." *Rouge Indus.*, No. 03–13272, 2006 WL 148946, at *4, 2006 Bankr.LEXIS 61, at *11. Moreover, because the Transfers vary in amount and frequency, the presence of a scheme or course of conduct is not supported. *Cf. Gerardo Leasing*, 173 B.R. at 390–91 (permitting additional transfers to relate back to the original complaint because each transfer challenged consisted of weekly payments of $1,500).

According to the Trustee, the Administrative Services Agreement provided fair notice to Guardian that the Trustee sought to attack "transactions occurring during the entire history of [the] relationship" between Guardian and the Debtor. This is not correct. The Original Complaint did not reference the Administrative Services Agreement or specify any facts regarding the relationship between Guardian and the Debtor. In this case, the facts alleged in the Original Complaint did not provide Guardian with adequate notice that the Additional Transfers were subject to recovery by the Trustee. Therefore, the Court will grant partial summary judg-

ment in favor of Guardian with respect to the Additional Transfers.

### E. Count 1—Avoidance of Preferential Transfers

■ Guardian's final argument focuses on Count 1 of the Amended Complaint, which alleges that the Transfers constituted preferential transfers. Specifically, Guardian argues that the Trustee failed to carry his burden of proof under section 547(b)(5) which requires that the Trustee establish the Transfers enabled Guardian to receive more that it would have received if "(A) the case were a case under chapter 7 . . .; (B) the transfer had not been made; and (C) [Guardian] received payment of such debt to the extent provided by the provisions of [the Code]." 11 U.S.C. § 547(b)(5)(A)-(C). To satisfy his burden, the Trustee must offer evidence of the Debtor's liabilities, the amount of claims filed against the Debtor, and whether any assets have been recovered since the Petition Date. See Biggs v. Capital Factors, Inc. (In re Goetz), No. 96–55944, 1997 WL 415340, at *1, 1997 U.S.App. LEXIS 19191, at *3 (9th Cir. July 24, 1997) (holding that without evidence of assets, liabilities and claims, "the bankruptcy court was unable to determine whether [the defendant] received more than other creditors in its class . . . under a Chapter 7 liquidation"); Burdick v. Lee, 256 B.R. 837, 841 (D.Mass. 2001) (same).

Guardian cites the lack of evidence produced by the Trustee as well as the Trustee's answers to Guardian's request for admissions. Of particular note is the Trustee's admission that he did not perform any analysis or calculation to support his section 547(b)(5) allegation. Once again, the Trustee did not address this argument.

The Court concludes that the Trustee has failed to carry his burden of proof and

that a grant of partial summary judgment in favor of Guardian with respect to Count 1 of the Amended Complaint is appropriate. The Trustee has the burden of proving the avoidability of the Transfers under section 547(b). See 11 U.S.C. § 547(g). As such, the Trustee must establish each element of section 547(b), including section 547(b)(5). In the instant case, there has been adequate time for discovery and the Trustee has presented no evidence in response to Guardian's Motion for Summary Judgment to support an element essential to his claim.

The Supreme Court has made it clear that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does not bear the ultimate burden of proof at trial, its burden under Rule 56 will be satisfied "by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. Accord Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir.1992). If the moving party satisfies its burden, the burden then shifts to the non-moving party "to come forward with persuasive evidence that his claim is not 'implausible.'" Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir.1988) (quoting Matsushita, 475 U.S. at 587, 106 S.Ct. 1348). It is important to note that even if there are contested material issues of fact, summary judgment is appropriate if the nonmoving party fails to support its claim:

[A] complete failure of proof concerning an essential element of the nonmov-

108

ing party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. *See also* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 56:11[1][B] (3d ed.2005) ("If proof is absent or insufficient regarding any necessary element of a claim, the claimant can not win at trial and trial is therefore unnecessary."). Consequently, the Court will grant partial summary judgment in favor of Guardian on Count 1.

## IV. *CONCLUSION*

The Court will grant partial summary judgment in favor of Guardian with respect to the Additional Transfers. The Court also will grant partial summary judgment with respect to Count 1 of the Amended Complaint.

An appropriate order is attached.

### ORDER

AND NOW, this 1st day of **JUNE, 2006,** upon consideration of the Motion of The Guardian Life Insurance Company of America for Summary Judgment, the response of the Trustee thereto, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion is **GRANTED IN PART** and Judgment is entered in favor of Guardian with respect to the April 19 and May 16, 2001 payments; and it is further

**ORDERED** that the Motion is **GRANTED IN PART** and Judgment is entered in favor of Guardian with respect to Count 1

(Avoidance of Preferential Transfers) of the Amended Complaint;